AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>System76 brand laptop; Model Number: Gaze15; Serial Number: 8K08SC164777; USPIS evidence barcode # IS0001667657 | Case No.  '22 MJ02035 |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference.

located in the __Southern__ District of __California__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution and Possession with Intent to Distribute a Controlled Substance; |
| 21 U.S.C. §843(b) | Unlawful Use of a Communications Facility to Facilitate the Distribution of |
| 21 U.S.C. §846 | a Controlled Substance; Conspiracy to Distribute a Controlled Substance |

The application is based on these facts:

See attached Affidavit of US Postal Inspector Matt E. Carroll

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Matt E. Carroll, US Postal Inspector
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by __Telephone__ *(specify reliable electronic means)*.

Date: June 6, 2022

*Judge's signature*

City and state: San Diego, CA   Hon. Michael S. Berg, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A-2
## PROPERTY TO BE SEARCHED

**Target Laptop 2** is described as one (1) System76 brand laptop; Model Number: Gaze15; Serial Number: 8K08SC164777; impounded into evidence under USPIS evidence barcode # IS0001667657 at the USPIS San Diego Field Office, within the Southern District of California

# ATTACHMENT B
# ITEMS TO BE SEIZED

The evidence to be searched for and seized from the **Target Laptops** concerns violations of 21 U.S.C. §§ 841(a)(l), 843(b) and 846, and is described as follows:

All records, documents, files, materials, or items, in whatever form, paper, electrical, or electronic found in the location described in Attachment A that constitute or contain evidence of a crime, contraband, fruits of a crime, proceeds of a crime, other items illegally possessed, instrumentalities, or property designed for use, intended for use, or used in committing a crime of violations of Title 21, United States Code, Sections 841(a)(l) (distribution and possession with intent to distribute a controlled substance), 843(b) (unlawful use of a communication facility (including the mails) to facilitate the distribution of a controlled substance), 846 (conspiracy to distribute a controlled substance).

(A)  All documents, photographs, and records containing data reflecting or memorializing the ordering, possession, purchase, storage, distribution, transportation, and sale of controlled substances, including buyer lists seller lists, pay owe sheets, records of sales, log books, drug ledgers, personal telephone / address books containing the names of purchaser and suppliers of controlled substances, electronic organizers, telephone bills, telephone answering pads, and bank and financial records.

(B)  All documents, records, and items related to passwords, password files, test keys, encryption codes, or other information necessary to access computer files, computer software, storage devices, digital wallets or funds, or other password-protected data.

(C)  With respect to any and all electronically stored information in mobile phones and PDAs, agents may access, record, and seize the following:

    i.  Telephone numbers of incoming/outgoing calls stored in the call registry;

    ii.  Digital, cellular, and/or telephone numbers and/or direct connect numbers, names and identities stored in the directories;

    iii.  Any incoming/outgoing text messages relating to violations of Title 21, United States Code, Sections 841, 843, and 846;

        iv.       Telephone subscriber information;

        v.       Telephone numbers stored in the cellular telephone and/or PDA; and

        vi.       Any other electronic information in the stored memory and/or accessed by the active electronic features of the digital or mobile phone including but not limited to photographs, audio recordings, videos, e-mail, and voice mail relating to violations of Title 21, United States Code, Sections 841, 843, and 846.

(D)     Any and all digital software, that is, digital information that can be interpreted by a computer and any of its related components to direct the way they work. This includes but is not limited to programs to run operating systems, applications, utilities, compilers, interpreters, and communications programs.

(E)     Any and all user-attribution data, to include data reflecting who used or controlled the computer or electronic storage device at or around the time that any data reflecting criminal activity within the scope of this warrant was created, accessed, deleted, modified, copied, downloaded, uploaded, or printed. User-attribution data includes registry information, computer logs, user profiles and passwords, web-browsing history, cookies, electronic mail stored on the computer or device, electronic address books, calendars, instant messaging logs, electronically-stored photographs and video, file structure, and user-created documents, including metadata.

# AFFIDAVIT FOR SEARCH WARRANT

I, Matt Carroll, being duly sworn, hereby depose and state:

## TRAINING AND EXPERIENCE

1. I am a Federal Agent employed as an inspector by the U.S. Postal Inspection Service ("USPIS"). I am an "investigative or law enforcement officer" of the United States within the meaning 18 U.S.C. 2510(7) and a federal law enforcement officer under Fed. R. Crim. P. 41(a)(2)(C). I am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. 3061.

2. I have been employed as a Postal Inspector since June 2012. From June 2012 through September 2012, I attended the Basic Postal Inspector Academy. I am a member of the San Diego Contraband Interdiction and Investigations ("CI2") Team. Prior to this assignment, I was assigned to the US Postal Inspection Service's Mail Theft and Violent Crimes and the Mail Fraud and Money Laundering teams in San Francisco, California and the Mail Theft and Violent Crimes team in San Diego, California. I have had formal training in controlled substance investigations, and have become familiar with the manner in which controlled substances are packaged, marketed, cultivated, manufactured and consumed. I also serve as an Anti-Money Laundering ("AML") program specialist for the USPIS which involves conducting investigations and providing expertise on money laundering and bank secrecy act enforcement.

3. I also possess a Master's Degree in Accounting and an active Certified Public Accountant ("CPA") license in the State of Massachusetts. Additionally, I hold the private industry computer certifications CompTIA A+ and Security+ which cover computer/network repair and data/network security, respectively. Over the course of my employment, I have attended several training courses related to identity theft, drug cartels and narcotics trafficking, money laundering, bitcoin and cryptocurrency, the dark web, cellphone investigations and asset forfeiture.

4. My current duties include investigating violations of the federal Controlled Substance Act and related offenses. I have also had training regarding the investigation of

individuals who use the U.S. mail to transport controlled substances and proceeds from their sale, and who use Postal Money Orders to launder the proceeds.

## PURPOSE OF WARRANT

5. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, witness interviews, reviews of documents, and computer records related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of a search warrant, it does not set forth every fact that I or others have learned during the course of this investigation. This affidavit supports an application for a warrant authorizing a search of the following devices:

(1) One (1) 13" Apple MacBook Pro laptop; Model Number: A1278; Serial Number: C1MQK54ADTY3; impounded into evidence under USPIS evidence barcode # IS0001667656 at the USPIS San Diego Field Office, within the Southern District of California (as described in Attachment A-1) (hereinafter "**Target Laptop 1**");

(2) One (1) System76 brand laptop; Model Number: Gaze15; Serial Number: 8K08SC164777; impounded into evidence under USPIS evidence barcode # IS0001667657 at the USPIS San Diego Field Office, within the Southern District of California (as described in Attachment A-2) (hereinafter "**Target Laptop 2**");

Collectively referred hereinafter the **"Target Laptops"**;

for the items described in Attachment B; in violation of Title 21, United States Code, Sections 841(a)(l) (distribution and possession with intent to distribute a controlled substance), 843(b) (unlawful use of a communication facility (including the mails) to facilitate the distribution of a controlled substance), and 846 (conspiracy to distribute a

2

controlled substance).

## PROBABLE CAUSE

### Investigation Summary

*Case Initiation*

6. On May 18, 2020, I received a lead from USPIS analysts regarding the address PO Box 532614, San Diego, CA 92153 (hereinafter "Box 532614"). Box 532614 was believed to be receiving proceeds of controlled substance sales via the US Mail from the Tupelo, MS area.

7. On May 19, 2020, I obtained a copy of the PS Form 1093 – *Application for Post Office Box Service*, for Box 532614. From that form, I learned that Box 532614 was opened on January 25, 2020 by Jamiron EATMON ("EATMON") who used the physical address of 2854 Evans Cir., Tupelo, MS 38801 and phone number of (619) 240-4405 to open that box.

8. On May 20, 2020, I searched law enforcement databases. Through my searches, I obtained a copy of EATMON's current Florida driver's license and his driver's license photograph.

9. While using USPS databases, I identified several suspicious parcels mailed from the San Diego, CA area to several addresses in the Tupelo, MS area which had a direct association to parcels mailed to Box 532614, the box opened by EATMON, to include but not limited to, the following addresses:

   2750 EVANS CIR, TUPELO, MS 38801

   PO BOX 622, VERONA, MS 38879

   389 COUNTY ROAD 125, HOULKA, MS 38850

*Seizure of 943 Counterfeit M30 Oxycodone Pills Containing Fentanyl*

10. On May 27, 2020, I was alerted that Priority Mail parcel bearing tracking number 9505 5144 9587 0147 5147 41 addressed to "Darren Weatherspoon 2750 Evans Circle Tupelo, MS, 38801," with the return address of "Alicia Weatherspoon 1516 Hicks St Oceanside, CA, 92054" was mailed from Carlsbad, CA (within the Southern District of

3

California) on May 26, 2021 (hereinafter "Subject Parcel 1"). On June 5, 2020, Subject Parcel 1 was sent to the USPIS San Diego Field Office for further investigation by USPIS personnel.

11. On June 8, 2020, after inspecting the parcel, I determined that Subject Parcel 1 had various indicia raising suspicion, including, but not limited to, being heavily sealed and using excessive tape; a return address with a name that could not be associated with that address; and a recipient address that also could not be located with the name of the individual listed as the recipient among others. On that same day, a trained and certified narcotics detection dog and the dog's Border Patrol handler conducted an exterior examination of Subject Parcel 1 and the canine alerted to the presence of the odor of controlled substances on the parcel. On June 11, 2020, the Honorable Daniel E. Butcher authorized Southern District of California federal search warrant number 20MJ2263 for Subject Parcel 1.

12. On June 12, 2020, I searched Subject Parcel 1 pursuant to the warrant, and it was found to contain approximately 126.3 grams of suspected counterfeit M30 oxycodone pills. One pill was selected at random and was field tested using the TruNarc Handheld Narcotics Analyzer which field tested positive for acetaminophen. I know from my training and experience that legitimate M30 oxycodone pills do not contain acetaminophen as an active ingredient; thus, these pills appeared to be counterfeit M30 Oxycodone pills containing fentanyl which are commonly referred to on the street as "blues" or "roxys".

13. A laboratory test was conducted by the US Postal Inspection Service's National Forensic Laboratory ("USPIS FLS") on the pills contained in Subject Parcel 1. USPIS FLS determined that 943 pills were contained inside Subject Parcel 1. One pill was selected at random by a USPIS FLS forensic chemist and was found to contain N-Phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), 4-anilino-N-phenethylpiperidine ("4-ANPP"), and acetaminophen. The net weight of the pills and fragments (excluding the analyzed pill) was $105.27 \pm 0.05$ grams. Fentanyl and 4-ANPP are Schedule II controlled substances.

14.     I have reviewed surveillance video of the mailing of Subject Parcel 1 from the Carlsbad Main Post Office. I have reviewed EATMON's Florida driver's license photograph, and, based upon my review of the surveillance video and the photograph of EATMON, as well as the other information detailed herein, I believe that EATMON was the individual who mailed Subject Parcel 1.

15.     On June 5, 2020 while using USPS databases, I learned that phone number (619) 240-4405 had called the USPS customer service hotline to inquire about Subject Parcel 1. This is the same phone number listed on the Post Office Box Application mentioned previously herein that was used by EATMON when he opened the box. A DEA administrative subpoena was served on AT&T for subscriber information associated to cellular phone number (619) 240-4405. AT&T responded to the subpoena, and I learned that cellular phone number (619) 240-4405 was assigned to the AT&T subscriber account of "Jamiron Eatmon."

**Seizure of 1.7 Kilograms of Methamphetamine**

16.     On November 4, 2020, I was alerted that Priority Mail parcel bearing tracking number 9505 5158 1253 0308 4648 33 addressed to "Tayanda Armstrong 389 County Road 125 Houlka, MS, 38850," with the return address of "Evan Brower 2007 Estrella Road Prescott, AZ, 86305" was mailed from Imperial Beach, CA (within the Southern District of California) on November 3, 2021 (hereinafter "Subject Parcel 2"). On or about the same date, I referred Subject Parcel 2 to Inspectors in Mississippi. On November 5, 2020, I was informed that Subject Parcel 2 had been intercepted by USPIS personnel.

17.     On November 10, 2020, after an inspector in Mississippi determined that the mailing address in Prescott, AZ did not who anyone by the surname of Brower living at that address and after a narcotics detector dog alerted to the exterior of the parcel, United States Magistrate Dave Sanders, in the Northern District of Mississippi, authorized a federal search warrant number in Case No. 1:20-MJ-35 for Subject Parcel 2. On or about the same date, Postal Inspector C. Tutor searched the parcel pursuant to the warrant, and it was found to contain approximately 4 pounds of a clear, crystalline substance that Inspector

Tutor recognized, based on his training and experience, to be consistent with methamphetamine.

18. A lab test was conducted by the USPIS FLS on the clear, crystalline substance contained in Subject Parcel 2. USPIS FLS determined that the clear, crystalline substance was found to contain d-methamphetamine hydrochloride with a 96 ± 3% purity and weighed 1,781.84 ± 0.10 grams. Methamphetamine is a Schedule II controlled substance.

19. I have reviewed EATMON's Florida driver's license photograph and, based on my review of the surveillance video of the mailing of Subject Parcel 2 from the Imperial Beach Main Post Office. I believe that EATMON was the individual who mailed Subject Parcel 2. In addition to my review of the surveillance video, EATMON's fingerprint was located on this priority parcel.

### *Seizure of 1,000 Counterfeit M30 Oxycodone Pills Containing Fentanyl*

20. On or about November 20, 2020, Inspector Tutor informed me that he had intercepted Priority Mail parcel bearing tracking number 9505 5138 1726 0321 4157 10 addressed to "JEFFREY FLEMINGS PO BOX 622 VERONA, MS, 38879" with the return address of "BILL WILLIAMSON 2993 W LODGEPOLE LANE SHOW LOW, AZ, 85901" which was mailed from Chula Vista, CA (within the Southern District of California) on November 16, 2020 (hereinafter "Subject Parcel 3").

21. On November 19, 2020, the Honorable Jane M. Virden authorized Northern District of Mississippi federal search warrant number 4:20-MJ-1016 for Subject Parcel 3. On that same day, after inspecting the parcel, the Postal Inspector determined that the package included a return address with a name that could not be associated with that address; and a recipient address that also could not be located with the name of the individual listed as the recipient. In addition, the return address on the package was "Show Low, AZ" which was determined to be eight hours from the mailing point in Chula Vista, CA. The Hon. Jane M. Virden signed the search warrant for Subject Parcel 3. On November 20, 2020, Postal Inspector C. Tutor searched the parcel pursuant to the warrant, and it was found to contain approximately 115.4 grams of suspected counterfeit M30 oxycodone pills.

Inspector Tutor and agents from the Mississippi state police attempted to conduct a controlled delivery of Subject Parcel 3; however, the intended recipient never picked up the parcel.

22. A laboratory test was conducted by the USPIS FLS on the pills contained in Subject Parcel 3. USPIS FLS determined that 1,000 pills were contained inside Subject Parcel 3. Two pills were selected at random by a USPIS FLS forensic chemist and were found to contain fentanyl, 4-ANPP, and acetaminophen. The net weight of the pills and fragments (excluding the analyzed pills) was $109.84 \pm 0.05$ grams. Fentanyl and 4-ANPP are Schedule II controlled substances.

23. I have reviewed EATMON's Florida driver's license photograph, and based upon my review of the surveillance video of the mailing of Subject Parcel 3 from the Rancho Del Rey Post Office in Chula Vista, CA, I believe that EATMON was the individual who mailed Subject Parcel 3.

***Seizure of $20,000 in US Currency***

24. On March 23, 2021, I was alerted Priority Mail parcel bearing tracking number 9505 5100 1303 1081 4044 19 addressed to "Jamiron Eatmon PO Box # 532614 San Diego CA, 92153," with the return address of "Hazel Eatmon 3236 Shonda Circle Tupelo MS, 38801" was mailed from Tupelo, MS on March 22, 2021 (hereinafter "Subject Parcel 4).

25. On March 26, 2021, I came in contact with Subject Parcel 4 at the Otay Mesa Postal Store, within the Southern District of California, and I detained it for further investigation. On March 29, 2021, I met with I met with United States Border Patrol Agent (BPA) Cary Parsoneault and her trained narcotic detection canine, "Falco" at the at the USPIS San Diego Field Office, within the Southern District of California. The canine team conducted an exterior examination of Subject Parcel 4. After the canine team examined Subject Parcel 4, BPA Parsoneault told me "Falco" alerted to the presence of the odor of controlled substances on Subject Parcel 4.

26. On March 30, 2021, the Honorable Bernard G. Skomal authorized federal

search warrant number 21MJ1175 for Subject Parcel 4. On March 31, 2021, I searched Subject Parcel 4 pursuant to the warrant and found it to contain $20,000 in US Currency in various denominations.

27. On March 29, 2021 while using USPS databases, I learned that EATMON had contacted USPS customer service via email inquiring about the status of Subject Parcel 4. EATMON provided the contact phone number (619) 240-4405.

*Arrest of EATMON and the Seizure of the Target Laptops*

28. On May 26, 2021, the Honorable Michael S. Berg authorized a three-count criminal complaint and arrest warrant for EATMON for violations of 21 USC 841(a)(1) – Possession with Intent to Distribute Methamphetamine and Fentanyl. On or about May 27, 2021, a Homeland Security Investigations ("HSI") agent entered EATMON into the Department of Homeland Security's ("DHS") Traveler Enforcement Compliance System ("TECS") with a request to detain and send EATMON to secondary inspection upon entry into the United States.

29. On July 14, 2021 at approximately 4:10 PM, EATMON presented himself for admission into the United States at the San Ysidro Port of Entry primary vehicle lanes, within the Southern District of California, driving a Ford Mustang bearing California tag number 7FAF463. Based on a NCIC and TECS alert, EATMON was sent to secondary inspection. At approximately 5:15 PM, a Customs and Border Protection ("CBP") Officer contacted me and advised that EATMON had been sent to secondary inspection and detained at the San Ysidro Port of Entry based on the USPIS arrest warrant. CBP Officers searched EATMON's person and vehicle incident to EATMON's arrest and pursuant to the border search exemption. During the search, CBP Officers seized $27,194 US Currency in various denominations, the **Target Laptops**, and an Apple iPhone X cellphone. On the same date, the US Currency, the **Target Laptops**, and the cellphone were transferred to my custody, and I impounded them into evidence at the USPIS San Diego Field Office, within the Southern District of California.

30. On January 6, 2022, the Honorable Michael S. Berg authorized federal search

warrant number 22MJ0074 for EATMON's cellphone. The cellphone was sent to the US Postal Inspection Service's San Francisco Digital Evidence Unit (DEU) where it was determined to be locked and encrypted. As of the date of this affidavit, the cellphone is still on a Greyshift GreyKey Forensic Access Tool to be unlocked. This process involves using a "brute-force" unlock whereby the GreyKey device tries each passcode until the passcode is guessed correctly, which is a very time-intensive process. I know from my training and experience that cellphones, like the cellphone that was in EATMON's possession at the time of his arrest, can be backed up to devices such as the **Target Laptops**, and the **Target Laptops** may have backups of the cellphone and related responsive materials that could aid in this investigation.

## OPINIONS AND CONCLUSIONS

31.     Through the course of my training, experience, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics traffickers to work in concert with other individuals, and do so by utilizing computers, laptops, cellular phones, pagers, and portable radios to maintain communications with co-conspirators in order to further their criminal activities.  This is particularly true in cases involving distribution of controlled substances, which are commonly secreted inside parcels shipped through use of the US Mail and private courier services such as Federal Express (FedEx) and United Parcel Service (UPS). Typically, drug traffickers who distribute controlled substances by shipping parcels are in frequent telephonic and/or online contact with co-conspirators in order to receive instructions or updates on the status of their orders and are attempting to continue to track the delivery of the parcels as I believe EATMON was doing using the **Target Laptops** and cellphones he had in his possession at the time of his arrest.

32.     Additionally, I know persons committing these criminal acts will often boast about the criminal activity to friends, associates, or co-conspirators.  This boasting is not only done verbally, but can be done in letters, notes, photographs, e-mails, instant messaging, text, or other computer and cellular phone type communications. They often save these documents related to their crimes as memorabilia or reference material which

9

can be located in physical form or on computers, cellular phones, or digital storage media.

33. Based on my training and experience, I know that individuals who use computers in their crimes will often try to hide the digital evidence by deleting data files. Computer forensic specialists can often retrieve these data files, even after their deletion. Individuals who use computers in their crimes may use several different applications, operating systems, and storage devices to manage the information and communications related to these acts.

34. Furthermore, based on my training and experience, I know that persons in control of digital devices leave evidence of their identification such as photographs, documents, email, and text correspondence. Such described dominion and control evidence is vital to proving control over the described property to be seized and may also exist on the subject devices.

35. Based on the probable cause set forth in the affidavit, I believe a forensic examination of the **Target Laptops** will uncover additional evidence of EATMON's participation in narcotics trafficking and will reveal photographs, internet history, documents, and communications referring or relating to this investigation.

## COMPUTER SEARCH WARRANT METHODOLOGY
### Procedures For Electronically Stored Information

36. With the approval of the Court in signing this warrant, agents executing this search warrant will employ the following procedures regarding computers and other electronic storage devices, including electronic storage media, that may contain data subject to seizure pursuant to this warrant:

### Seizure and Retention of Instrumentalities

a. Based upon the foregoing, there is probable cause to believe that computers and other electronic storage devices encountered during this search may contain contraband and fruits of crime as provided at Rule 41(c)(2) of the Federal Rules of Criminal Procedure, or were used in committing crime as provided at Rule 41(c)(3), and are therefore instrumentalities of the enumerated offenses. Consequently, the computers and any other

electronic storage devices are subject to seizure, retention, and possible forfeiture and destruction. Computers, other electronic storage devices, and electronic media that agents confirm onsite contain contraband, constitute fruits of crime, or have been used to commit crime will not be returned. Instead, those electronic storage devices and media will be imaged offsite and analyzed as provided beginning at subparagraph (c) below. The onsite confirmation may be provided by an owner or user of the computer or storage device or, if feasible, may be obtained by conducting a limited onsite forensic examination to determine if the subject media contains any contraband or otherwise is an instrumentality. Computers and other electronic storage devices and media that are not confirmed onsite as instrumentalities will be taken offsite for imaging and preliminary analysis in accordance with subparagraph (b) below.

   b. The offsite imaging and preliminary analysis of computers and other electronic storage devices and media to confirm their status as instrumentalities will be conducted within forty-five (45) days of seizure. Seized items confirmed to be instrumentalities will not be returned and will be further analyzed as provided below. If the preliminary analysis, by definition an incomplete or partial analysis, does not confirm that a seized item is an instrumentality, the original item will be returned promptly to its owner, absent an extension of time obtained from the owner or from the court. An image of the items will be retained and subjected to a complete forensic analysis, as provided below.

   c. Computers and other electronic storage devices and media that are retained as instrumentalities will not be returned to the owner. The owner will be provided the name and address of a responsible official to whom the owner may apply in writing for return of specific data not otherwise subject to seizure for which the owner has a specific need. The identified official or other representative of the seizing agency will reply in writing. If the owner's request is granted, arrangements will be made for a copy of the requested data to be obtained by the owner. If the request is denied, the owner will be directed to Rule 41(g) of the Federal Rules of Criminal Procedure.

**Identification and Extraction of Relevant Data**

d. A forensic image is an exact physical copy of the hard drive or other electronic storage media. After obtaining a forensic image, the imaged copy will be analyzed to identify and extract data subject to seizure pursuant to this warrant. Analysis of the data following the creation of the forensic image can be a highly technical process requiring specific expertise, equipment, and software. There are thousands of different hardware items and software programs, and different versions of the same programs, that can be commercially purchased, installed, and custom-configured on a user's computer system. Computers are easily customized by their users. Even apparently identical computers in an office environment can be different with respect to configuration, including permissions and access rights, passwords, data storage, and security. It is not unusual for a computer forensic examiner to have to obtain specialized hardware or software, and train with it, in order to view and analyze imaged data.

e. Analyzing the contents of a computer or other electronic storage device, even without significant technical challenges, can be very challenging. Searching by keywords, for example, often yields many thousands of hits, each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant hit does not end the review process for several reasons. The computer may have stored metadata and other information about a relevant electronic record – e.g., who created it, when and how it was created or downloaded or copied, when it was last accessed, when it was last modified, when it was last printed, and when it was deleted. Keyword searches may also fail to discover relevant electronic records, depending on how the records were created, stored, or used. For example, keywords search text, but many common electronic mail, database, and spreadsheet applications do not store data as searchable text. Instead, the data is saved in a proprietary non-text format. Documents printed by the computer, even if the document was never saved to the hard drive, are recoverable by forensic programs because the printed document is stored as a graphic image. Graphic images, unlike text, are not subject to keyword

searches. Similarly, faxes sent to the computer are stored as graphic images and not as text. In addition, a particular relevant piece of data does not exist in a vacuum. To determine who created, modified, copied, downloaded, transferred, communicated about, deleted, or printed the data requires a search of other events that occurred on the computer in the time periods surrounding activity regarding the relevant data. Information about which user had logged in, whether users share passwords, whether the computer was connected to other computers or networks, and whether the user accessed or used other programs or services in the time period surrounding events with the relevant data can help determine who was sitting at the keyboard.

    f. It is often difficult or impossible to determine the identity of the person using the computer when incriminating data has been created, modified, accessed, deleted, printed, copied, uploaded, or downloaded solely by reviewing the incriminating data. Computers generate substantial information about data and about users that generally is not visible to users. Computer-generated data, including registry information, computer logs, user profiles and passwords, web-browsing history, cookies and application and operating system metadata, often provides evidence of who was using the computer at a relevant time. In addition, evidence such as electronic mail, chat sessions, photographs and videos, calendars and address books stored on the computer may identify the user at a particular, relevant time. The manner in which the user has structured and named files, run or accessed particular applications, and created or accessed other, non-incriminating files or documents, may serve to identify a particular user. For example, if an incriminating document is found on the computer but attribution is an issue, other documents or files created around that same time may provide circumstantial evidence of the identity of the user that created the incriminating document.

    g. Analyzing data has become increasingly time-consuming as the volume of data stored on a typical computer system and available storage devices has become mind-boggling. For example, a single megabyte of storage space is roughly equivalent to 500 double-spaced pages of text. A single gigabyte of storage space, or 1,000 megabytes,

13

is roughly equivalent to 500,000 double-spaced pages of text. Computer hard drives are now being sold for personal computers capable of storing up to 2 terabytes (2,000 gigabytes) of data. And, this data may be stored in a variety of formats or encrypted (several new commercially available operating systems provide for automatic encryption of data upon shutdown of the computer). The sheer volume of data also has extended the time that it takes to analyze data. Running keyword searches takes longer and results in more hits that must be individually examined for relevance. And, once reviewed, relevant data leads to new keywords and new avenues for identifying data subject to seizure pursuant to the warrant.

      h.    Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including the use of hashing tools to identify evidence subject to seizure pursuant to this warrant, and to exclude certain data from analysis, such as known operating system and application files. The identification and extraction process may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within one-hundred twenty (120) days from the date of seizure pursuant to this warrant, absent further application to this court.

      i.    All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

## GENUINE RISKS OF DESTRUCTION

37. Based upon my experience and training, and the experience and training of other agents with whom I have communicated, electronically stored data can be permanently deleted or modified by users possessing basic computer skills. In this case, only if the subject receives advance warning of the execution of this warrant, will there be a genuine risk of destruction of evidence.

## PRIOR ATTEMPTS TO OBTAIN DATA

38. The United States has not attempted to obtain this data by other means.

## CONCLUSION

39. Based on the facts set forth in this affidavit, I believe there is probable cause that evidence of a crime, contraband, fruits of a crime, proceeds of a crime, other items illegally possessed, instrumentalities, or property designed for use, intended for use, or used in committing a crime of violations of Title 21, United States Code, Sections 841(a)(l) (distribution and possession with intent to distribute a controlled substance), 843(b) (unlawful use of a communication facility (including the mails) to facilitate the distribution of a controlled substance), and 846 (conspiracy to distribute a controlled substance) are concealed in the locations identified in Attachment A. Accordingly, I request the issuance of a search warrant authorizing the search of the locations described in Attachments A, as well as the seizure of items described in Attachment B.

40. I declare under penalty and perjury the foregoing is true and correct to the best of my knowledge and belief.

MATT CARROLL
United States Postal Inspector

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1 on June 6, 2022.

HONORABLE MICHAEL S. BERG
United States Magistrate Judge

15